UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

LARRY JONES HAND, III,

               Petitioner,

vs.                                 Case No. 3:04-cv-1029-J-32MCR

JAMES R. MCDONOUGH,[1] etc.;
et al.,

               Respondents.

_____

## ORDER[2]

### I. Status

    Petitioner Hand is proceeding on an Amended Petition for Writ of Habeas Corpus (Doc. #5) (hereinafter Amended Petition) pursuant to 28 U.S.C. § 2254. He is represented by counsel. Petitioner is challenging 1995 Brevard County convictions for first degree murder, armed burglary, armed robbery, petit theft (three counts), forgery (six counts), uttering a forgery (six counts) and grand theft (five counts). Petitioner claims that his trial counsel was ineffective based on the following claims: (1) counsel failed to

_____

[1] James R. McDonough, the Secretary of the Florida Department of Corrections, is substituted as the proper party Respondent for James V. Crosby, Jr., pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

[2] Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically. However, it has been entered only to decide the motion or matter addressed herein and is not intended for official publication or to serve as precedent.

investigate, prepare and present an insanity defense; (2) counsel had a fee agreement with Petitioner which created a conflict of interest which adversely affected counsel's performance; and, (3) counsel erroneously conceded that Petitioner was in a photograph with the murder victim shortly before the homicide, which suggested a motive for Petitioner to kill the victim and supported the state's case of premeditated murder.

Respondents filed a Response to Petition (Doc. #15) (hereinafter Response) on October 12, 2004. Petitioner's Reply to Response to Petition (Doc. #26) was filed on June 2, 2005. On June 3, 2005, Petitioner filed an Appendix to Reply to Response to Petition (Doc. #28).

## II. Procedural History

Petitioner was charged by indictment with the first degree premeditated murder of Alonzo Brough Treffer, one count of armed burglary, one count of armed robbery, seven counts of forgery, seven counts of uttering a forgery, four counts of grand theft and four counts of petit theft. Ex. A at 1-9.[3] The state moved to consolidate the first degree murder case with another pending case against Petitioner in which he was charged with the attempted murder of Stephen Caylor. Id. at 10-11. A hearing was conducted. Ex. E at 8-14. The motion was denied. Ex. A at 12-13. A second

---

[3] The Court hereinafter refers to Respondents' Appendix (Doc. #17), filed October 13, 2004, as "Ex."

- 2 -

motion to consolidate was filed by the state.  Ex. A at 14-15.  It too was denied by the trial court.  Ex. E at 17-154.

A jury trial was conducted, and the state sought the death penalty.  Ex. B.  Hand was found guilty of twenty-two counts, including the murder count.  Ex. A at 16-37.  A judgment of acquittal was entered on counts ten (forgery), eleven (uttering a forgery) and twelve (petit theft).  Id. at 38.  The jury recommended a life sentence.  Id. at 39.  Judgment was entered, and he was sentenced to life imprisonment on murder, armed burglary and robbery with a deadly weapon, to run concurrently with his sentences for grand theft, petit theft, uttering a forgery and forgery.  Id. at 40-50.

A direct appeal was taken.  Ex. A at 51-120.  The state responded.  Id. at 121-61.  Petitioner replied.  Id. at 162-86.  The Fifth District Court of Appeal per curiam affirmed in a decision filed on October 15, 1996.  Id. at 187.  Petitioner moved for rehearing or clarification.  Id. at 188-91.  The motion was denied.  Id. at 192.  The mandate issued on December 9, 1996.  Id. at 193.

On December 3, 1997, Petitioner filed a Rule 3.850 Motion for Post-Conviction Relief.  Ex. C at 1-29.  Three grounds of ineffective assistance of trial counsel were raised: (1) counsel failed to investigate and prepare a defense; (2) counsel told the jury the defendant was in a photograph taken hours before the

victim's death in which the victim used a credit card; and, (3) counsel never discussed with the defendant his constitutional right to testify.   Id.   On April 6, 1998, the trial court entered an order denying grounds two and three of the motion, with attachments, and ordered a response from the state on ground one. Ex. D at 1-147.   An Answer to Defendant's Motion for Post Conviction Relief was filed on May 28, 1998.   Ex. E at 1-437.

Petitioner filed an Amended Point to Motion for Post-Conviction Relief in open court on November 19, 1998, Ex. C at 30-36, raising an additional ground of ineffective assistance of counsel, ground four:   counsel's fee agreement with defendant created an actual conflict of interest that adversely prejudiced counsel's performance.

Evidentiary hearings were conducted on January 11, 2002, October 16, 2002, and December 12, 2002.   Ex. F.   These hearings concerned grounds one and four.   Petitioner was represented by counsel.   An Order Denying Defendant's Motion for Post-Conviction Relief was filed on February 19, 2003.[4]   Ex. G at 1-119.   Three grounds were raised on appeal:   (1) the trial court erred in denying postconviction relief where trial counsel was ineffective for failing to investigate and prepare a defense based on appellant's mental illness; (2) the trial court erred in denying

---

[4] The first order denying in part post-conviction relief was incorporated by reference.

postconviction relief where the fee contract created a conflict of interest; and, (3) the trial court erred in summarily denying postconviction relief on appellant's claim that counsel was ineffective for telling the jury that appellant was in a photograph with the victim which was taken shortly before the victim's death. Ex. H at 2.   The state responded.   <u>Id</u>. at 43-91.   Petitioner replied.   <u>Id</u>. at 92-108.   The Fifth District Court of Appeal affirmed per curiam on July 20, 2004.   <u>Id</u>. at 109; <u>Hand v. State</u>, 877 So.2d 731 (Fla. 5th DCA 2004).   The mandate issued on August 6, 2004.   <u>Id</u>. at 110.

## III.  Timeliness

The Amended Petition was timely filed.   <u>See Nix v. Sec'y for Dep't of Corr.</u>, 393 F.3d 1235, 1236-37 (11th Cir. 2004) (per curiam), <u>cert</u>. <u>denied</u>. 545 U.S. 1114 (2005) (allowing the ninety-day <em>certiorari</em> period whether or not a federal constitutional claim was raised on direct appeal).

## IV.  Evidentiary Hearing

A habeas corpus petitioner is entitled to an evidentiary hearing in federal court if he alleges facts which, if proven, would entitle him to habeas corpus relief.   <u>Smith v. Singletary</u>, 170 F.3d 1051, 1053-54 (11th Cir. 1999) (citation omitted); <u>Cave v. Singletary</u>, 971 F.2d 1513, 1516 (11th Cir. 1992) (citing <u>Townsend v. Sain</u>, 372 U.S. 293 (1963)).   Here, the pertinent facts of the case are fully developed in the record before the Court.   <u>Smith</u>,

- 5 -

170 F.3d at 1054 (stating that a district court does not need to conduct an evidentiary hearing "if it can be conclusively determined from the record that the petitioner was not denied effective assistance of counsel"). No evidentiary proceedings are required in this Court. See High v. Head, 209 F.3d 1257, 1263 (11th Cir. 2000) (citing McCleskey v. Zant, 499 U.S. 467, 494 (1991)), cert. denied, 532 U.S. 909 (2001). The Court can "adequately assess [Petitioner's] claim[s] without further factual development." Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).

Here, there was a complete and full evidentiary hearing conducted by the trial court with regard to grounds one and two of the Amended Petition. Petitioner was represented by counsel. No further evidentiary proceedings are needed for this Court to adequately assess Petitioner's claims. Therefore, for the reasons set forth above, an evidentiary hearing will not be conducted by this Court.

## V.  Standard of Review

Since this action was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214 (hereinafter AEDPA), April 24, 1996, the Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d), as amended by AEDPA. Nelson v. Alabama, 292 F.3d 1291, 1294-95 (11th Cir. 2002), cert. denied, 538 U.S. 926 (2003); Fugate v. Head, 261

- 6 -

F.3d 1206, 1215 n.10 (11th Cir. 2001), <u>cert</u>. <u>denied</u>, 535 U.S. 1104 (2002); <u>Wilcox v. Florida Dep't of Corr.</u>, 158 F.3d 1209, 1210 (11th Cir. 1998), <u>cert</u>. <u>denied</u>, 531 U.S. 840 (2000).   Under AEDPA, however, the review "is 'greatly circumscribed and highly deferential to the state courts.' <u>Crawford v. Head</u>, 311 F.3d 1288, 1295 (11th Cir. 2002)." <u>Stewart v. Sec'y for Dep't of Corr.</u>, 476 F.3d 1193, 1208 (11th Cir. 2007).

The Eleventh Circuit has explained this deferential review:

First, § 2254(e)(1) sets a deferential standard of review for factual determinations made by a state court, stating that "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."   28 U.S.C. § 2254(e)(1); <u>Marquard v. Sec'y for Dep't of Corr.</u>, 429 F.3d 1278, 1303 (11th Cir. 2005), <u>cert</u>. <u>denied</u>, — U.S. —, 126 S.Ct. 2356, 165 L.Ed.2d 283 (2006).

Second, § 2254(d) allows federal habeas relief for a claim adjudicated on the merits in state court only if the state court adjudication resulted in a decision that was: "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); <u>Marquard</u>, 429 F.3d at 1303.   The phrase "clearly established Federal law," as used in § 2254(d)(1), encompasses only the holdings, as opposed to the dicta, of the United States Supreme Court as of the time of the relevant state court decision.  <u>See</u> <u>Carey v. Musladin</u>, 549 U.S. —, 127 S.Ct. 649, 653, 166 L.Ed.2d

> 482 (2006) (citing <u>Williams v. Taylor</u>, 529
> U.S. 362, 412, 120 S.Ct. 1495, 1523, 146
> L.Ed.2d 389 (2000)); <u>Osborne v. Terry</u>, 466
> F.3d 1298, 1305 (11th Cir. 2006).

<u>Stewart</u>, 476 F.3d at 1208-09.

Under 28 U.S.C. § 2254(d)(2), this Court must determine whether the state court's adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Furthermore, AEDPA "also directs that a presumption of correctness be afforded factual findings of state courts, which may be rebutted only by clear and convincing evidence. <u>See id</u>. at § 2254(e)(1). This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." <u>Bui v. Haley</u>, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing <u>Sumner v. Mata</u>, 449 U.S. 539, 547 (1981)).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. <u>Wright v. Sec'y for Dep't of Corr.</u>, 278 F.3d 1245, 1255 (11th Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S. 906 (2003). <u>See Peoples v. Campbell</u>, 377 F.3d 1208, 1227 (11th Cir. 2004), <u>cert</u>. <u>denied</u>, 545 U.S. 1142 (2005). Thus, to the extent

that Petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under the new § 2254(d).

## VI.  Ineffective Assistance of Counsel

Petitioner has raised claims of ineffective assistance of counsel.  As noted previously, the standard of review to be applied is that found in AEDPA.  As explained by the Supreme Court of the United States:

> Under 28 U.S.C. § 2254, [Petitioner's] entitlement to federal habeas relief turns on showing that the state court's resolution of his claim of ineffective assistance of counsel under Strickland v. Washington, supra, "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1). An "unreasonable application" occurs when a state court "'identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." Wiggins v. Smith, supra, at 520, 123 S.Ct. 2527 (quoting Williams v. Taylor, 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (opinion of O'CONNOR, J.)). That is, "the state court's decision must have been [not only] incorrect or erroneous [but] objectively unreasonable." Wiggins v. Smith, supra, at 520-521, 123 S.Ct. 2527 (quoting Williams v. Taylor, supra, at 409, 120 S.Ct. 1495 (internal quotation marks omitted)).
>
> Ineffective assistance under Strickland is deficient performance by counsel resulting in prejudice, 466 U.S., at 687, 104 S.Ct. 2052, with performance being measured against an "objective standard of reasonableness," id., at 688, 104 S.Ct. 2052, "under prevailing professional norms." Ibid.; Wiggins v. Smith, supra, at 521, 123 S.Ct. 2527.

- 9 -

Rompilla v. Beard, 545 U.S. 374, 380 (2005).

The United States Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that '[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" Wiggins v. Smith, 539 U.S. 510, 521 (2003) (quoting Strickland v. Washington, 466 U.S. 668, 688 (1984)).

The Eleventh Circuit has expounded upon the deference due to counsel's performance as well as to the state court's decision concerning that performance:

> In assessing [Petitioner's] claim that his trial counsel were ineffective we must keep in mind that "[j]udicial scrutiny of counsel's performance must be highly deferential." Id. at 689, 104 S.Ct. at 2065. In addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision. Woodford, 537 U.S. at 24, 123 S.Ct. at 360 (section 2254(d)(1) imposes a "highly deferential standard for evaluating state-court rulings") (internal marks and citation omitted). [Petitioner] must do more than satisfy the Strickland standard. He must also show that in rejecting his ineffective assistance of counsel claim the state court "applied Strickland to the facts of his case in an objectively unreasonable manner." Bell v. Cone, 535 U.S. 685, 699, 122 S.Ct. 1843, 1852, 152 L.Ed.2d 914 (2002).

Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004), cert. denied, 544 U.S. 982 (2005).

- 10 -

The Eleventh Circuit explained the substantial burden of proving an unreasonable performance by counsel:

> The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one. See Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc). In order to establish deficient performance, the petitioner must show that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence. See Strickland v. Washington, 466 U.S. 668, 690, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984). The court's review of counsel's performance should focus on "not what is possible or what is prudent or appropriate, but only [on] what is constitutionally compelled." Chandler, 218 F.3d at 1313 (quoting Burger v. Kemp, 483 U.S. 776, 107 S.Ct. 3114, 3126, 97 L.Ed.2d 638 (1987)). The court's review of counsel's performance must be highly deferential, and the court must avoid second-guessing counsel's performance. See Strickland, 466 U.S. at 689, 104 S.Ct. at 2065. For a petitioner to show deficient performance, he "must establish that no competent counsel would have taken the action that his counsel did take." Id.

Osborne v. Terry, 466 F.3d 1298, 1305-06 (11th Cir. 2006), petition for cert. filed (U.S. May 10, 2007) (No. 06-11285).

## VII.  Ground One

In his first ground, Petitioner contends that his counsel was ineffective for failing to investigate and raise an insanity defense. This claim was raised in a Rule 3.850 motion. After conducting an evidentiary hearing on the claim, the trial court, in denying the ground, said:

- 11 -

**THIS CAUSE** came before the Court upon the
Defendant's Motion for Post-Conviction Relief,
filed pursuant to Rule 3.850, Florida Rules of
Criminal Procedure, on December 3, 1997.  On
April 5, 1998, the Court issued an Order
Denying Defendant's Motion for Post-Conviction
Relief in Part and Ordering State to Respond
to Ground One.  On May 28, 1998, the State
filed an Answer to Defendant's Motion for
Post-Conviction Relief.  On November 19, 1998,
the Defendant filed an Amended Point to Motion
for Post-Conviction Relief.  An evidentiary
hearing was held on January 11, 2002, October
16, 2002, and December 12, 2002.  On October
30, 2002, the Defendant filed the Defendant's
Closing Argument.  The Court has heard and
considered the arguments of Counsel and has
carefully reviewed the Defendant's motions,
the state's answer, and the Defendant's
Closing Argument together with the other
evidence presented.  Based upon this review,
and being otherwise fully advised in the
premises, the Court makes the following
findings of fact and conclusions of law:

. . . .

b.   Under ground one of the Defendant's
Motion for Post-Conviction Relief, the
Defendant claims that he received ineffective
assistance of counsel when his attorney failed
to investigate and raise the insanity defense.
In addition to the charges in the subject
case, the Defendant was also charged with an
attempted murder that occurred on the same
night as the murder in the subject case.  The
attempted murder occurred at the residence of
the victim, Mr. Caylor, who resided less than
a mile from Mr. Treffer, the victim in the
murder case.  The Defendant points out that
after the Defendant was tried and convicted in
the murder case, his attorney investigated an
insanity defense in the attempted murder case.
The Defendant also claims that prior to his
trial in the murder case, his parents asked
his attorney to pursue a medical defense and
supplied his attorney with information
indicating that the Defendant may have been

- 12 -

insane at the time of the murder. The Defendant claims that the doctors who examined him in regard to the attempted murder case determined that he was psychotic and suffering from seizures at the time of the crime. The Defendant points out that due to the close proximity in time between the attempted murder and the murder, if he was insane at the time of the attempted murder, he must have been insane at the time of the murder.

c. During the evidentiary hearing, Michael Scott Maher, M.D., a physician and psychiatrist, testified that he examined the Defendant in July of 1997 with respect to the attempted murder case. (See Exhibit "BB", 10/16/02 Transcript, pg. 9). Dr. Maher testified that he determined that the Defendant was psychotic at the time of the crime due to cocaine intoxication, cocaine urges, and cocaine withdrawal. He testified that in his opinion the Defendant was insane by the McNaughton Standard at the time of both the attempted murder and the murder and that he was not aware of the wrongfulness of his actions. (See Exhibit "BB", pgs. 10-14).

d. Gary M. Weiss, M.D., a neurologist, testified that he examined the Defendant in June of 1995 with regard to the attempted murder case. (See Exhibit "BB", pgs. 36-37). He diagnosed the Defendant with temporal lobe seizure disorder. He determined that the Defendant was in a psychotic episode at the time of the attempted murder and the murder due to temporal lobe seizures and the use of cocaine. He testified that cocaine can induce seizures, especially in someone with a seizure disorder and a person could become aggressive or violent during a seizure. (See Exhibit "BB", pgs. 42-44). Doctor Weiss testified that in his opinion, the Defendant was not able to form the intent to commit the crimes and did not know whether what he was doing was right or wrong. (See Exhibit "BB", pg. 57). However, Doctor Weiss admitted on cross examination that he could not be one hundred percent sure that the Defendant was in a

- 13 -

psychotic episode at the time of the crimes.
(See Exhibit "BB", pgs. 66 and 76).

e.   Daniel Ciener, the attorney who
represented the Defendant in the murder and
attempted murder cases, testified that he
considered using the insanity defense during
the murder trial and decided against it.  Mr.
Ciener gave the following reasons for
rejecting the insanity defense:

1.  The insanity defense is a bad
defense and is used as a last
resort.  He did not know of any case
in Brevard County in which a jury
determined that a defendant was not
guilty of first degree murder
because he was insane at the time of
the murder.

2.  The facts of the case show that
the person who committed the murder
intended to do it; therefore, an
insanity defense would have been
unsuccessful.

3.  He would have been forced to
waive speedy trial to pursue an
insanity defense.  If he waived
speedy trial, then the Defendant
could have been convicted of the
attempted murder before the murder
trial.  The attempted murder
conviction could then have been used
as an aggravator during the penalty
phase of the murder trial.

4.  He did not want the murder case
and the attempted murder case to be
consolidated.  He used the fact that
he was presenting different defenses
in the cases to argue against
consolidation.

5.  In the murder case they could
present the defense that the
Defendant did not commit the crime.
However, in the attempted murder

- 14 -

case the victim was alive and could identify the Defendant.  Therefore, in the attempted murder case it was better to raise the insanity defense than the defense that the Defendant did not commit the crime.

6.  He did not believe that the jury would believe that the Defendant was insane because of the Defendant's accomplishments.  The Defendant was a straight-A student in college where he was majoring in engineering and he had an impressive job and scholarships.

(See Exhibit "CC", 1/11/02 Transcript, pgs. 43-119).  It is clear from the testimony that Mr. Ciener made a strategic decision not to raise the insanity defense at trial. "[S]trategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct." Occhicone v. State, 768 So.2d 1037, 1048 (Fla. 2000).  Mr. Ciener testified that he considered raising the insanity defense at the murder trial and rejected it.  Mr. Ciener's decision was reasonable given the reasons he gave for rejecting the defense.  Therefore, the Defendant has not established that the failure of Mr. Ciener to investigate or raise the insanity defense in the murder trial rendered his representation deficient.

Ex. G at 1-6 (footnote omitted).  The court also noted that Petitioner entered a plea of nolo contendere in the attempted murder case (to attempted second degree murder), and did not take the case to trial and pursue an insanity defense.  Id. at 3 n.1; Response at 31.

- 15 -

The state court adjudicated Petitioner's claim of ineffective assistance of counsel on the merits, and thus, there is a qualifying state court decision. See Wright, 278 F.3d at 1255-56. First, the trial court recognized that Strickland v. Washington, 466 U.S. 668 (1984), sets forth the standard for reviewing ineffective assistance of counsel claims. Ex. D at 3 (incorporated by reference of the trial court). Then, the trial court ruled on the merits. Ex. G. The state appeals court affirmed. Ex. H at 109.

Having found that the state court determination was a qualifying decision, the Court must next consider the "contrary to" and "unreasonable application" components of the statute. "It is the objective reasonableness, not the correctness per se, of the state court decision that we are to decide." Brown v. Head, 272 F.3d 1308, 1313 (11th Cir. 2001), cert. denied, 537 U.S. 978 (2002).

The decisions of the trial court and the Fifth District Court of Appeal are entitled to deference under AEDPA. The adjudication of the state trial and appellate courts resulted in decisions that involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court. 28 U.S.C. § 2254(d). Therefore, Petitioner is not entitled to relief on his claim of ineffective assistance of counsel raised in ground one of the Amended Petition because the state courts' decisions were not

contrary to clearly established federal law, were not based on an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

The state trial court's factual findings have not been rebutted by clear and convincing evidence. In fact, upon review of the record of the evidentiary hearing, there is sufficient evidence to support the findings of the trial judge and additional evidence, not specifically referenced, which supports the conclusions that counsel was not ineffective. Some of that additional evidence is recounted below.

The testimony of Mr. Ciener's co-counsel, Andy Fouche, further explained the rationale behind the decision not to use the insanity defense in the murder case. Mr. Fouche confirmed that they demanded a speedy trial to get to trial quickly, before the attempted murder case could be used against Petitioner as an aggravator so as to avoid the death penalty. Ex. F at 289-90. Mr. Ciener feared that the jury would not want to place a "crazy killer" on the street, so he discounted the insanity defense. Id. at 294. Also, the conflicting defenses ("did not do it" and "insanity") helped prevent the state from consolidating the two cases at trial, one of Mr. Ciener's primary goals because he believed that if the jury heard the evidence in the attempted

murder case, they would want to convict Petitioner in the murder case.  Id. at 295, 311.

Mr. Fouche described a visit to the jail to see Petitioner to discuss possible defenses to the murder case.  Id. at 292.  When he explained the insanity defense, Petitioner expressed his desire to be quickly put back on the streets.  Id. at 292-93.  Petitioner stated that he was a good student with career opportunities lined up, and he wanted to quickly get back to his life.  Id.  Mr. Fouche explained the ramification of a successful insanity defense would likely not allow that because "the Court could and likely would order him to a State mental hospital for an indefinite period of time."  Id. at 293.

Ultimately, Mr. Ciener's theory of the case was to put the state to its proof at trial.  Id. at 305.  When Mr. Fouche went to the jail to explain this theory to Petitioner, Petitioner concurred and made no objection to the defense chosen.  Id. at 306.

In preparing for the attempted murder case (where an insanity defense was contemplated), depositions were taken of several doctors.  Dr. Gary M. Weiss attested that there was "about an 80 to 90 percent probability that [petitioner] has seizures."  Ex. E at 192.  The seizures would be "partial complex seizures."  Id.  He also testified that he saw evidence of a closed head injury.  Id. at 195.  However, he stated that it should not interfere with Petitioner's ability to tell right from wrong.  Id. at 196.  He

- 18 -

opined that these issues combined with drug use might cause a psychotic episode where Petitioner would not know what he was doing.  <u>Id</u>. at 197.  Dr. Weiss did not give an opinion as to Petitioner's ability to understand right from wrong based on the particular facts of the attempted murder case.  <u>Id</u>. at 198.  He explained that the more logical and rational the actions were, the more likely the person did know right from wrong.[5]  <u>Id</u>. at 199-200.

Dr. Robert G. Kirkland testified that Petitioner knew that he had a weapon, he knew what might occur as a result of the use of the weapon, and that he knew it was wrong.  <u>Id</u>. at 230.  He said, "I think there was something wrong with him, it comes more to issues like of mitigation than of a straight out --"  <u>Id</u>.  Finally, Dr. Pontius was deposed and testified concerning a limbic psychotic trigger reaction.  <u>Id</u>. at 263.  Her testimony was deemed inadmissible based on the <u>Frye</u> standard.[6]  <u>Id</u>. at 427.

Based on the depositions, it appears that the insanity defense in the attempted murder case had significant problems and, of course, the state would have been able to present its own experts

---

[5] There was strong argument at the evidentiary hearing that Petitioner's goal directed conduct during the course of the murder and the clean-up after the murder would not have made an insanity defense feasible.  Ex. F at 363.

[6] Dr. Pontius related the mental disease, disorder or defect that supports her insanity opinion is that Petitioner has a limbic psychotic trigger reaction.  Testimony was presented that this diagnosis is not a recognized and generally accepted diagnosis within the scientific community.

to rebut the insanity defense.[7]   Ultimately Petitioner chose to plead guilty to second degree attempted murder rather than proceed to trial in the attempted murder case.

Thus, it is not at all clear that the insanity defense would have been successful even if it had been asserted in the murder case.   Moreover, not only did counsel manage to get an intoxication defense instruction during the guilt phase of the murder case, he also managed to obtain mental health mitigation instructions during the penalty phase, which phase ended in a life recommendation and ultimately a life (rather than death) sentence.   Counsel also pushed the murder case to trial prior to a conviction in the attempted murder case, to forestall a potential aggravator that could have proved problematic for the defense during the penalty phase of the murder trial.

Based on the evidence presented in the state court proceeding, the state courts' adjudications finding no ineffective assistance of counsel for failure to assert an insanity defense were decisions that were based on a reasonable determination of the facts and correct application of controlling law.

## VIII.  Ground Two

In his second ground, Petitioner claims his counsel was ineffective because he had a fee agreement with Petitioner which

---

[7]The medical testimony adduced by petitioner after the fact at the evidentiary hearing in 2002 was stronger but remained untested in the crucible of a trial.

created a conflict of interest which adversely affected counsel's performance.  This issue was raised in Petitioner's Amended Point to Motion for Post-conviction Relief.  Ex. C at 30-36.  It was addressed at the evidentiary hearing.  The Rule 3.850 motion was denied, Ex. G at 1-11, and although this ground was raised on appeal of the denial of the Rule 3.850 motion, the appellate court affirmed per curiam.  Ex. H at 109.

In denying the fourth ground, the trial court stated:

> f.  The Defendant claims in his Amended Point to Motion for Post Conviction Relief that he received ineffective assistance of counsel when the fee agreement that the Defendant entered into with his attorney created an actual conflict of interest that adversely prejudiced the defense.  The Defendant claims that the fee agreement called for the Defendant to pay a flat fee and that all costs necessary to investigate and prepare for trial were to be taken out of this fee.  According to the Defendant, this fee agreement gave his attorney an incentive not to prepare for trial because all costs would come out of his own pocket.  The Defendant claims that as a result of this fee agreement, his attorney did not depose state witnesses, did not investigate any defense witnesses, and did not investigate an insanity defense.
>
> g.  During the evidentiary hearing, Mr. Ciener testified that he entered into a contract with the Defendant's parents under which they would pay a flat fee of $20,000 and all costs necessary to investigate and prepare for trial would come out of that fee.  (See Exhibit "CC", pgs. 20-22).  He testified that he did not take any depositions in the murder case.  He testified that he normally does not take many depositions because they tend to tip the prosecutor off to problems with the State's case and give the prosecutor a chance

to fix those problems before trial.   Mr.
Ciener also testified that he did not hire any
investigators to look into the State's
witnesses.  He further testified that he has a
rule that he does not call any witnesses if he
does not have to so that he can open and close
during the closing arguments.  (See Exhibit
"CC", pgs. 36-41).

   h.  In <u>Cole v. State</u>, 700 So. 2d 33 (Fla.
5th DCA 1997), the Fifth District Court of
Appeal affirmed the denial of Cole's 3.850
motion.  In his motion, Cole alleged that he
received ineffective assistance of counsel
when his attorney, Daniel Ciener, failed to
investigate and present a defense.  The Fifth
District held that Mr. Ciener's failure to
conduct any investigation prior to trial and
blanket policy of not calling witnesses to
retain the first and last closing argument
rendered his representation deficient.  <u>Id</u>. at
36.  However, the Court affirmed the denial of
the motion because Cole had not established
that he was prejudiced by Mr. Ciener's
deficient conduct.  <u>Id</u>.  The Fifth District
also criticized the fee agreement entered into
by Mr. Ciener and Cole.  Under the fee
agreement, Cole was to pay Mr. Ciener a fee of
$9,500 and the fee was to include all
discovery and investigative fees.  The Court
held that the fee agreement presented a
conflict of interest because all investigative
costs were to come out of Mr. Ciener's pocket.
The Court also stated that the fee agreement
was "at least misleading, if not deceptive"
because of Mr. Ciener's policy of not
conducting any discovery.  <u>Id</u>. at 37.  The
Court held that Cole was not entitled to
relief because the conflict of interest did
not adversely affect his lawyer's performance.
<u>Id</u>.  The Court noted that Mr. Ciener's
defective performance was due to his policy
for trying cases and was no[t] due to the fee
agreement.  <u>Id</u>.

   i.  In the instant case, Mr. Ciener used
the same fee agreement that he used in the
<u>Cole</u> case.  He also used the same practice of

refusing to conduct any investigation or to
call defense witnesses. This Court
disapproves of this conduct and finds that Mr.
Ciener's performance was deficient in this
case, as the Fifth District Court of Appeal
did in Cole. This Court also finds that the
fee agreement used in this case created a
conflict of interest. However, as in Cole
[sic], the Defendant has not demonstrated that
his defense was prejudiced by Mr. Ciener's
deficient performance. The Defendant has not
demonstrated in any way that the failure to
conduct depositions of State witnesses or to
conduct any other investigation prior to trial
would have changed the outcome of the trial.
As to Mr. Ciener's failure to investigate the
insanity defense, as stated above, the Court
finds that Mr. Ciener made a strategic
decision not to pursue the insanity defense
which was reasonable under the circumstances.
Mr. Ciener did not make this decision simply
because of his practice of not conducting any
pretrial investigation. He also did not make
this decision because the costs of the
investigation would come out of his own pocket
under the fee agreement. The Defendant also
has not demonstrated that the conflict created
by the fee agreement adversely affected Mr.
Ciener's performance.

    j.   The conduct of Mr. Ciener is
startling when the facts of this case are
compared to the facts of Cole. The instant
case is a first degree murder case where the
death penalty was sought, but fortunately for
Mr. Hand, the jury recommended life in prison.
Would Mr. Ciener's actions be viewed
differently by this Court if his tactics had
failed and his client was now on death row?
It would not surprise this Court if our
Supreme Court were to take exception to these
tactics in this type of case. Although the
instant case was tried prior to the Cole
decision, Mr. Ciener's testimony during the
evidentiary hearing demonstrates that he
currently employs the same tactics that were
criticized in the Cole decision. (See Exhibit
"CC", pgs. 36-42). Furthermore, this Court

- 23 -

has observed Mr. Ciener employ the same investigative and discovery tactics criticized in <u>Cole</u> in death penalty cases tried after the release of the <u>Cole</u> decision.  For example, Mr. Ciener used the same tactics in the case of <u>State v. Williams</u>, case no. 05-2001-CF-30561-BXXX-XX,in which the death penalty was sought and the defendant was found not guilty, and the case of <u>State v. Giblin</u>, case no. 05-2001-CF-37175-AXXX-XX, in which the death penalty was sought, the defendant was found guilty, and the jury recommended life.  It appears that Mr. Ciener is ignoring the guidance of the Fifth District Court of Appeal in <u>Cole</u>.

Ex. G at 6-10 (footnotes omitted).

In sum, the trial court found conflict and deficient performance, but no actual prejudice.  In <u>Strickland</u>, the United States Supreme Court explained:

In certain Sixth Amendment contexts, prejudice is presumed.  Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice. So are various kinds of state interference with counsel's assistance.  <u>See</u> <u>United States v. Cronic</u>, 466 U.S., at 659, and n. 25, 104 S.Ct., at 2046-2047, and n. 25.  Prejudice in these circumstances is so likely that case-by-case inquiry into prejudice is not worth the cost.  466 U.S., at 658, 104 S.Ct., at 2046. Moreover, such circumstances involve impairments of the Sixth Amendment right that are easy to identify and, for that reason and because the prosecution is directly responsible, easy for the government to prevent.

One type of actual ineffectiveness claim warrants a similar, though more limited, presumption of prejudice.  In <u>Cuyler v. Sullivan</u>, 446 U.S., at 345-350, 100 S.Ct., at 1716-1719, the Court held that prejudice is presumed when counsel is burdened by an actual

- 24 -

> conflict of interest.  In those circumstances,
> counsel breaches the duty of loyalty, perhaps
> the most basic of counsel's duties.  Moreover,
> it is difficult to measure the precise effect
> on the defense of representation corrupted by
> conflicting interests.  Given the obligation
> of counsel to avoid conflicts of interest and
> the ability of trial courts to make early
> inquiry in certain situations likely to give
> rise to conflicts, <u>see</u>, <u>e.g.</u>, Fed. Rule Crim.
> Proc. 44(c), it is reasonable for the criminal
> justice system to maintain a fairly rigid rule
> of presumed prejudice for conflicts of
> interest.  **Even so, the rule is not quite the
> per se rule of prejudice that exists for the
> Sixth Amendment claims mentioned above.
> Prejudice is presumed only if the defendant
> demonstrates that counsel "actively
> represented conflicting interests" and that
> "an actual conflict of interest adversely
> affected his lawyer's performance."** <u>Cuyler v.
> Sullivan</u>, <u>supra</u>, 466 U.S., at 350, 348, 100
> S.Ct., at 1719, 1718 (footnote omitted).

<u>Strickland</u>, 466 U.S. at 692 (emphasis added).

The <u>Cole</u> case recognized the <u>Strickland</u> standard for the more limited presumption of prejudice.  <u>Cole</u>, 700 So.2d at 37.  The trial court in the instant case found conflict, but prejudice was not presumed because the conflict did not adversely affect his lawyer's performance.[8]  The court concluded that Mr. Ciener made a strategic decision not to use the insanity defense.

The decisions of the trial court and the Fifth District Court of Appeal are entitled to deference under AEDPA.  The adjudication of the state trial and appellate courts resulted in decisions that

---

[8] The testimony of Mr. Ciener and Mr. Fouche at the evidentiary hearing was that trial preparations and decisions were not based on money.  Ex. F at 36-37, 51-52, 61, 72, 310.

involved a reasonable application of clearly established federal law, as determined by the United States Supreme Court.   28 U.S.C. § 2254(d).   Therefore, while this is a closer issue, Petitioner is not entitled to relief on his claim of ineffective assistance of counsel raised in ground two of the Amended Petition because the state courts' decisions were not contrary to clearly established federal law, were not based on an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.   See Rutherford, 385 F.3d at 1309 (noting "highly deferential" scrutiny of counsel's performance under Strickland and "another layer of deference" mandated by AEDPA).

## IX.  Ground Three

In his third and remaining ground, Petitioner contends his counsel was ineffective because he erroneously conceded that Petitioner was in a photograph with the murder victim shortly before the homicide, which suggested a motive for Petitioner to kill the victim and supported the state's theory of premeditated murder.   This ground was raised in the Rule 3.850 motion and was denied.   Ex. D.   The issue was pursued on appeal.   The appellate court per curiam affirmed.   Ex. H. at 109.

In denying this ground, the trial court held:

> f.   In ground two of the Defendant's motion, the Defendant alleges that his counsel

- 26 -

incorrectly stated during his closing argument that Defendant is in a picture with the victim, in which the victim used his credit card, which was taken the day before the murder took place. The Defendant claims that this statement prejudiced the defense because it shows that the Defendant had a motive for the murder because he wanted to steal the victim's credit card. This statement by the defense counsel does not constitute deficient performance under the first prong of the Strickland test. Defense counsel may have included this statement in his closing argument to show that the Defendant and the victim were friends and that the Defendant would not have killed such a close friend. (See Exhibit "A", pgs. 3954-3955). This proposition would be helpful to the defense.

Even if defense counsel's statement does constitute deficient performance, this deficiency did not prejudice the defense as required by the second prong of the Strickland test. The trial transcript shows that the evidence against the Defendant was so overwhelming that there is not a reasonable probability that, but for defense counsel's statement, the result of the proceeding would have been different. For example, Charles Smith, testified that on November 11, 1994, the morning that the murder supposedly took place, Defendant told him that he was going to get more money so that he could buy some more cocaine. (See Exhibit "A", pg. 2211). Steven Caylor testified that Defendant arrived at his house at 2:30 A.M. on November 11, attempted to murder him at about 4:00 A.M., and then left on his bicycle. (See Exhibit "A", pgs. 2077, 2084-2095). Mr. Caylor also testified that he lived about 8/10ths of a mile from the victim, Mr. Treffer. (See Exhibit "A", pg. 2102). James Thomas McGovern, a driver for Always Ready Cab Company, testified that he picked up the Defendant at the victim's house at 4:30 A.M. on November 11, and dropped him off on Lincoln Street. (See Exhibit "A", pgs. 2177-2182). Marilyn Rivers, who lives on Lincoln Avenue with Charles Smith, testified

that the Defendant arrived at her house early in the morning on November 11, before dawn. Charles Smith, Marilyn Rivers, and Charlotte Patterson, a friend of Mr. Smith and Ms. Rivers, each testified that while the Defendant was at the house on Lincoln Avenue in the early morning of November 11, he stated that he had killed someone. (See Exhibit "A", pgs. 2215, 2671, 2475). Charles Smith testified that around 7:30 A.M. on November 11, he and the Defendant went to Texaco, where the Defendant bought beer and gas, K-Mart, where the Defendant bought clothing, and McDuffs, where the Defendant bought a TV and a VCR. (See Exhibit "A", pgs. 2221-2229). Gary Bernard Holman, an employee at Merritt Island Texaco, testified that someone used Brough Treffer's credit card to purchase gas and beer on the morning of November 11. (See Exhibit "A", pgs. 2379-2384). Terrance Crovo, a former employee of McDuff's Electronics, testified that he sold a TV and a VCR to the Defendant who used Brough Treffer's credit card on November 11 at about 10:30 A.M. (See Exhibit "A", pgs. 2415-2416). Charlotte Patterson testified that she went to the Holiday Inn with the Defendant and another man on November 11, and the Defendant went into the office to get a room. (See Exhibit "A", pgs. 2483-2484). Jim Walls, a handwriting expert, testified that, in his opinion, the signatures on the credit card receipts from K-Mart, Texaco, McDuffs, and the Holiday Inn from November 11, 1994, were made by the Defendant, not by Mr. Treffer. (See Exhibit "A", pgs. 2937-2944, 2949-2951). Karen Mackiewicz, a friend of the Defendant from his church, testified that on November 12, she drove the Defendant to the victim's house where he put some newspapers by the front door that had been gathering up and picked up his bicycle. (See Exhibit "A", pgs. 2735-2740). Robin Jensen, a friend of the Defendant from his church, testified that on November 13, Defendant told her that he had killed an old man. (See Exhibit "A", pgs. 3131, 3139-3140). Dale Gilmore, a forensic DNA technologist, testified that he compared the blood from a

knife found at the crime scene with blood
taken from the Defendant and blood taken from
the victim, and the blood from the knife could
have been a mixture of blood from the
Defendant and blood from the victim. (See
Exhibit "A", pgs. 3371-3373). Agent Virginia
Casey testified that she compared a
fingerprint found at the crime scene to a
fingerprint of the Defendant and they were the
same. (See Exhibit "A", pgs. 3585-3591). The
statement made by the defense counsel, that
the Defendant was in a picture with the victim
taken the day before the murder, is not the
probable cause of the guilty verdict because
the other evidence against the Defendant was
so compelling.

Furthermore, if the Defendant is not in
the picture with the victim, as he states in
his postconviction motion, the jury could see
that for themselves. Before the closing
arguments began, the court instructed the jury
as follows:

The attorneys in presenting these
final arguments will be commenting
upon the evidence that you have
heard and upon the law. But please
remember that what they say is not
evidence.

(See Exhibit "A", pg. 3763). Therefore, the
jury could not rely on defense counsel's
statement that the Defendant was in the
picture if they could see with their own eyes
that he was not in the picture.

Ex. D at 5-8.

This decision and the affirmance of this decision by the Fifth

District Court of Appeal are entitled to deference under 28 U.S.C.

§ 2254(d). Petitioner is not entitled to relief on his claim of

ineffective assistance of counsel raised in ground three of the

Amended Petition because the state courts' decisions were not

contrary to clearly established federal law, were not based on an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

### X.  Conclusion

Based on the above, the Amended Petition is due to be denied. Any claims not specifically addressed are found to be without merit.  Accordingly, it is now,

**ORDERED AND ADJUDGED:**

1.    The Amended Petition for Writ of Habeas Corpus (Doc. #5) is **DENIED**, and the Clerk of the Court shall enter judgment denying the Amended Petition and dismissing this case **with prejudice**.

2.    The Clerk of the Court shall close this case.

3.    If asked, the Court will grant a certificate of appealability at least with respect to the first two grounds of the Amended Petition.  The Court is less certain about Ground Three but will consider it if asked.

**DONE AND ORDERED** in Jacksonville, Florida, this 27th day of September, 2007.

TIMOTHY J. CORRIGAN
United States District Judge

sa 9/24
c:
David Howard Foxman, Esquire
Ass't A.G. (Jolley)